Jones, J.
 

 This cause presents two legal phases for consideration: (1) Whether Brown’s petition states a good cause of action; and (2) if so, whether the defenses of the city and railroad company, pleaded in avoidance, constitute a legal bar to the action of plaintiff. The controlling facts are found in the statement of the case and will be alluded to in the course of this opinion.
 

 It is contended by the defendants that the petition was insufficient in law because Brown, the mortgagee, did not allege that the mortgagor was insolvent. The decided weight of authority in this country in cases where the mortgagee seeks recovery for impairment of his security is stated in the following text: “When action is brought by a mortgagee for injury to the property mortgaged, the solvency or insolvency of the mortgagor is generally considered immaterial, recovery being allowed in either case, though there would seem to be authority to the contrary.” 19 Ruling Case Law, 341; 41 Corpus Juris, 652. See also
 
 Kremer
 
 v.
 
 Crase,
 
 209 Wis., 183, 188, 244 N. W., 596, 87 A. L. R., 1004;
 
 Scaling
 
 v.
 
 First National Bank,
 
 39 Tex. Civ. App., 154, 159, 87 S. W., 715;
 
 Hummer
 
 v.
 
 R. C. Huffman Const. Co.,
 
 63 F. (2d), 372, 375;
 
 Jackson
 
 v.
 
 Turrell,
 
 39 N. J. L., 329, 332.
 

 As the action is one seeking damages for impairment of a mortgagee’s security, counsel for defendants insist that a mortgagee out of possession cannot recover damages for impairment of his security without showing that the condition of his mortgage has been broken. The prevailing rule in this country is found in 19 Ruling Case Law, 340, where the text
 
 *519
 
 states: “Generally speaking, a mortgagee, whether or not he has the possession, or right of possession, is entitled by virtue of his interest in the property mortgaged to maintain an action in his own name for impairment to his security.” It is generally held that if the action of the mortgagee is brought on the
 
 case
 
 for the impairment of his mortgage security, he has the right to recover. That principle was announced in the early case of
 
 Allison
 
 v.
 
 McCune,
 
 15 Ohio, 726, 45 Am. Dec., 605, where the syllabus reads: “A special action on the case lies against one who lessens the mortgage security of another, and damages may be recovered to the extent of any actual injury sustained by such act.” This case was later cited with approval in
 
 Smith,
 
 v.
 
 Altick,
 
 24 Ohio St., 369, 377.
 

 The case of
 
 Hummer
 
 v.
 
 Huffman Const. Co., supra,
 
 decided by the Federal Court of Appeals, adheres to the rule announced in the
 
 Altick case, supra,
 
 and states that such rule is sustained by the greater weight of authority in the United States; and, relying upon
 
 Delano
 
 v.
 
 Smith,
 
 206 Mass., 365, 92 N. E., 500, 30 L. R. A. (N. S.), 474, the federal court, in its opinion, holds that an action may be brought before there has been a breach in the conditions of the mortgage.
 

 Counsel for defendants argue that the expressions contained in the opinions in the
 
 Altick
 
 and
 
 Hummer cases, supra,
 
 are
 
 obiter dicta,
 
 since both cases disclose that in neither was there a, mortgage condition broken. However, we need not consider this phase of the ease for reasons hereafter stated.
 

 The general weight of authority in this country is as stated in the foregoing text in Ruling Case Law. Among many cases supporting the text may be cited the following:
 
 Matthews
 
 v.
 
 Silsby Brothers,
 
 198 Iowa, 1392, 201 N. W., 94, 37 A. L. R., 1116;
 
 Board of Levee Commissioners
 
 v.
 
 Wiborn,
 
 74 Miss., 396, 20 So., 861;
 
 Arnold
 
 v.
 
 Broad,
 
 15 Colo. App., 389, 62 P., 577;
 
 Moritz
 
 
 *520
 
 v.
 
 City of St. Paul, 52
 
 Minn., 409, 54 N. W., 370;
 
 Sherwood, Admr.,
 
 v.
 
 City of LaFayette,
 
 109 Ind., 411, 10 N. E., 89, 58 Am. Rep., 414;
 
 Cole
 
 v.
 
 Stewart,
 
 65 Mass., 181.
 

 While Brown, in his petition, did not specifically aver that a condition of his mortgage was broken, he does allege that “there is due and owing him” the snm of $15,352 and accrued interest as a valid lien upon the property. That allegation connotes the implication that a condition of his mortgage was broken and, in the absence of a motion to make such allegation definite and certain, it will be presumed that there was an amount then due and unpaid on his mortgage debt and that, in that respect, there was a default in one of the conditions of his mortgage. The Court of Appeals took that view and, we think, properly so.
 
 O’Brien
 
 v.
 
 Miller,
 
 117 F., 1000, 1001;
 
 George Adams & Frederick Co.
 
 v.
 
 South Omaha National Bank,
 
 123 F., 641, 644, 60 C. C. A., 579. Had the defendants believed the allegation to be vague or indefinite they should have filed a motion to make it definite and certain, thereby saving the hazard and expense of trial. Not having done so, defendants, having gone to trial without objection, will be deemed to have waived the objection on which they now rely.
 
 Pepper
 
 v.
 
 Sidwell, Admr.,
 
 36 Ohio St., 454, 458.
 

 Putting aside many of the legal contentions of counsel supporting or attacking .the petition we think the instant case should be determined upon the peculiar facts which it presents. This court has frequently decided that, when public authorities acquire easements in streets abutting an owner’s property the owner has a property right in the street in the nature of an
 
 incorporeal hereditament,
 
 and that such an interest is as much property as the lot itself; and that where such property is so taken the owner is entitled to compensation.
 
 Crawford
 
 v.
 
 Village of Delaware,
 
 7 Ohio St.,
 
 *521
 
 459, 469;
 
 Ginn. & Spring Grove Ave. St. Rg. Co.
 
 v.
 
 Village of Cumminsville,
 
 14 Ohio St., 523, 524;
 
 Lawrence Rd. Go.
 
 v.
 
 Williams,
 
 35 Ohio St., 168. TMs principie, so frequently announced by this court, is not controverted by counsel for defendants. Indeed, tbey could not well do so, since tbe record discloses that they instituted appropriation proceedings for tbe condemnation of part of tbe mortgagor’s property, and later effected a settlement with tbe mortgagor for tbe damages resulting from tbe appropriation. This property right attaching to tbe abutting lots effectually passed to his mortgagee upon tbe execution of tbe mortgage. Tbe mortgage on tbe premises was dated March 1, 1923, was filed April 12, 1923, and recorded in April of that year. Before tbe elimination proceedings were begun, as well as on October 20, 1930, when tbe mortgagor settled with tbe defendants for all claims or damages arising from tbe grade elimination, Brown’s mortgage was on record and was constructive notice to everyone who dealt with the mortgaged property. Brown was a
 
 bona fide
 
 purchaser in tbe fullest sense and was entitled to be protected as such. While tbe title which tbe defendants secured by means of their settlement contract may have been valid as between tbe parties thereto, it was subject to tbe terms of the recorded mortgage, of which both city and railroad company bad constructive notice.
 
 Varwig
 
 v.
 
 Cleveland, Cinn., Chicago & St. Louis Rd. Co.,
 
 54 Ohio St., 455, 44 N. E., 92;
 
 Jackson
 
 v.
 
 Turrell, supra; Severin
 
 v.
 
 Cole,
 
 38 Iowa, 463;
 
 Sherwood, Admr.,
 
 v.
 
 City of LaFayette, supra.
 
 Brown, tbe mortgagee, therefore, was entitled to relief unless forestalled by tbe defenses below asserting that tbe mortgagee bad been legally served by publication as provided by state law and the city charter, requiring him to present bis claim for damages within two weeks after publication; and that, upon failure to do so, be should be deemed to have
 
 *522
 
 waived any damages arising from the elimination proceedings, the defense alleging that no claim for damages had been filed by the mortgagee until nearly three years after such publication.
 

 Counsel for defendants contend that since notice by publication was required to be given to an “owner” it was not necessary to serve notice on Brown, who was a mortgagee and not the owner of the property. A sufficient answer to that contention is that notice must be brought home to Brown before his property could be taken. Their chief contention, however, is that if notice was necessary, it was given him by a proper legal publication, advising him that a portion of the mortgaged property was to be taken for the grade elimination.
 

 There is a wide divergence of authority in the reported cases upon the question whether a mortgagee should be considered an “owner” upon whom service by publication should be made. This divergence, however, usually arises from the peculiar language employed by statutes defining the persons for whom publication should be made. In this case, the Court of Appeals, following one line of authority, held that the mortgagee was an owner within the contemplation of our statutes and the Toledo charter; but the court further decided that the published notice was inadequate and legally insufficient to give notice to Brown that lots 14 and 15 described in his mortgage were to be taken by proceedings in eminent domain. Whether a mortgagee should be considered to be an “owner” or not, the published notice was wholly insufficient to bring home notice to Brown, either as owner or mortgagee, that his property was affected. Certainly if one’s property is to be taken by public authorities, the notice should more definitely advise the owner of that fact than was done in the instant case. Here the published legal notice recited the names of three specified
 
 *523
 
 owners, but Brown’s name was not among them. This in itself might not be decisive had the notice otherwise notified Brown that his mortgaged property was involved in the elimination proceedings. The published notice recited the fact that the city and railroad company had initiated proceedings for “the abolition of the grade crossing by the construction of a subway in Monroe Street, in said city.” It did not state what specific property was to be' taken or what lots abutting the improvement would be affected by the elimination proceedings; nor did it state at what point in Monroe street the construction was to be made. Had the notice effectually advised Brown that any of his property rights would be impinged he would then have been driven to the plans and specifications on file in order to ascertain the exact information as to the character of the improvement and the amount of damages he would sustain, so that he could more advantageously present his claim therefor; but the notice did not remotely- suggest to the mortgagee, who was a resident of Missouri, that his property was to be taken, or that the elimination proceedings would so seriously impair his security. The notice was wholly inadequate and did not comply with the principle announced in
 
 Harbeck
 
 v.
 
 City of Toledo,
 
 11 Ohio St., 219, where it was held that “the power conferred upon a municipal corporation to take private property for public use, must be
 
 strictly followed.”
 
 In that case, Judge Peck cites with approval the following language employed in
 
 Dyckman
 
 v.
 
 Mayor of New York,
 
 5 N. Y. (1 Seld.), 434, 439: “No prerogative of sovereign power should be watched with greater vigilance than that which takes private property for public use. It should never be exercised except when the public interests clearly demand it, and then cautiously; and the requirements of the statute authorizing its exercise must be
 
 strictly pursued.”
 
 The second proposition of the syllabus in
 
 *524
 

 Farber
 
 v.
 
 City of Toledo,
 
 104 Ohio St., 196, 135 N. E., 533, is apropos here: “But before a property owner may be held to have waived a claim for damages to or compensatioh for property affected or taken by a change of the grade of the street upon which his property abuts, it must appear that such property owner has had notice of such proposed change of grade.” A mere recital in the published notice that there was to be an abolition of a grade crossing “by the construction of a subway in Monroe Street,” without allusion to the lot numbers, and without stating the name of the owner or the point in Monroe street where the subway was to be constructed, was too vague and indefinite to inform the mortgagee that his property was to be taken for public uses, and did not conform to the principle announced in the Ohio cases.
 

 An additional complaint by counsel for defendants is that under the present status of the pleadings there has been no showing of actual damage to the mortgagee and that it is impossible to ascertain from the petition either the amount of or the measure of damage sustained by him. The mortgagee still holds security on the balance of the property not taken. The mortgagor or owner of the premises has not been made a party to the action. The implication underlying the argument of counsel is that' the mortgagee cannot recover if his security can be satisfied out of the mortgaged property unaffected by the condemnation proceedings. While the petition states that after the completion of the grade-crossing elimination the property depreciated in value and that his security was practically lost, those facts are not admitted by the defendants. The original mortgage debt, amounting to $17,500, has been reduced to $15,352. It may be that upon a sale of the property with the grade elimination completed, the mortgage debt will be fully satisfied, in which event it cannot be said that the security has
 
 *525
 
 been impaired. If that situation should develop the city and the railroad company should be relieved from liability to the mortgagee.
 

 The many reported cases touching the impairment of a mortgage security evince the difficulty of adopting any rigid and abstract rule that will govern the remedy that should be employed in individual cases. We are content to announce the principle that should apply to the case at bar. The Court of Appeals has remanded this case to the trial court for further proceedings. In order to secure equal and exact justice, it appears to us that, upon the remand, the petition should be- amended by adding new and necessary parties, obtaining appearances or proper service, and by adding an additional cause of action seeking the foreclosure of the mortgaged property. Such a course, we think, is permitted by our statute of amendments or
 
 jeofails
 
 (Section 11363, G-eneral Code), which has frequently been given liberal interpretation by our courts, especially where the amendments are sought before trial.
 

 The change suggested in the action relates to the form of the remedy. The entire transaction involves various and necessary parties, including the mortgagor, the mortgagee and the defendants; and relief could more adequately be given in a single action containing separate causes, one for foreclosure and another for damages which the mortgagee would sustain by reason of the impairment of his security. Such amendments are permissible within the rule approved in the case of
 
 Smith
 
 v.
 
 Altick, supra,
 
 and in
 
 Ohio Electric Ry. Co.
 
 v.
 
 United States Express Co.,
 
 105 Ohio St., 331, 137 N. E., 1. In the course of the opinion in the latter case, Judge Robinson said that the amendment set forth “an additional and a different cause of action from that averred in the original petition, required service of summons, waiver of service, or an
 
 *526
 
 entry of appearance, before the court acquired jurisdiction of the person of the express company.” Other cases reflecting upon the subject are the following:
 
 Durbin
 
 v.
 
 Fisk,
 
 16 Ohio St., 533;
 
 Wm. T. Spice & Son
 
 v.
 
 Steinruck,
 
 14 Ohio St., 213, in which the language of the chief justice can well be applied to the instant case. He said: “The proposed amendment was clearly in furtherance of justice. It proffered a speedy and comparatively inexpensive trial on the merits. It sufficiently guarded the rights of the defendants, and enabled them to attain a final hearing at less cost than would otherwise ensue.”
 

 The Court of Appeals committed no error in reversing the judgment of the trial court and remanding the cause to that court for further proceedings. The equitable cause in foreclosure should proceed to the final determination by a sale of the entire mortgaged property subject to the improvement; and whatever deficiency, if any, may then be required for the satisfaction of the mortgage security can be paid out of the damages secured against the wrong-doing defendants. In the meantime, the law action should be held in abeyance until after foreclosure and sale. The judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Stephenson, Williams, Matthias, Day and Zimmerman, JJ., concur.