DECISION AND FINAL JUDGMENT ENTRY
{¶ 1} This matter is before the Court on Paul Krooss' "Petition for Writ of Prohibition" ("Petition"), filed on November 24, 2008. On July 6, 2008, Krooss was cited for driving while under the influence of alcohol and speeding in Montgomery County. On November 24, 2008, Kroos filed a "Verified Petition for the Writ of Prohibition, Motion for Expedition and Peremptory Writ Demanded," asking us to prohibit Respondent, Judge Michael Murray of the Xenia Municipal Court, from proceeding with a trial on Krooss' OVI offense, due to an alleged lack of jurisdiction. On November 25, 2008, we issued an order overruling Krooss' motion for expedition and demand for a peremptory writ, and we ordered Krooss to file a memorandum addressed to the issue of jurisdiction by December 3, 2008. Respondent was given until December 8, 2008, to file a memorandum in response. Those memoranda have now been filed. In addition, Krooss filed a reply memorandum on December 9, 2008. *Page 2 
 {¶ 2} The events giving rise to this matter began when Ohio State Trooper B.K. Mangin observed Krooss speeding on I-675 in Greene County, Ohio, and followed Krooss as he exited the interstate onto Wilmington Pike, stopping him in Montgomery County. When Mangin approached Krooss, he noticed an odor of alcohol on Krooss' breath and observed that Krooss' eyes were red. Krooss failed subsequent field sobriety tests and a breathalyzer test revealed that Krooss was intoxicated. Mangin took Krooss into custody and transported him to jail in Greene County.
 {¶ 3} Krooss argues, since Mangin merely observed him speeding in Greene County, and there was no evidence of Krooss' intoxication until he was stopped in Montgomery County, the Xenia Municipal Court only has jurisdiction over his speeding citation, while the Kettering Municipal Court, in Montgomery County, has jurisdiction over his alleged OVI offense. According to Krooss, the jurisdiction of the Xenia court is territorial and determined by statute, and he argues that "proceedings against him in the Xenia Municipal Court threaten him with irreparable harm in terms of time, expense, the threat of incarceration, and loss of driving rights." Krooss relies upon City of North Ridegeville v.Stack, Lorain App. No. 05CA008759, 2006-Ohio-1177.
 {¶ 4} Respondent asserts that the same law applies in each county, and that there will be little or no variance in penalty, belying Krooss' argument of hardship should he be required to defend in Greene County. Respondent notes that there is nothing in the record to suggest that Krooss consumed alcohol only upon entering Montgomery County. Respondent further argues that Crim. R. 8(A) allows joinder of the offenses.
 {¶ 5} In Reply, Krooss argues that Respondent's Memorandum does not comply with the civil rules, appellate rules, local rules and our order, and that he is *Page 3 
entitled to a default judgment.
 {¶ 6} "`Prohibition is an extraordinary remedy which is customarily granted with caution and restraint, and is issued only in cases of necessity arising from the inadequacy of other remedies.' State ex rel.Henry v. Britt (1981), 67 Ohio St.2d 71, 73, 424 N.E.2d 297. To be entitled to a writ of prohibition, the petitioner must establish that: (1) the respondent is about to exercise judicial or quasi-judicial power; (2) the exercise of that power is unauthorized by law; and (3) denial of the writ will cause injury for which no other adequate remedy in the ordinary course of law exists. See State ex rel. Columbus S.Power Co. v. Fais, 117 Ohio St.3d 340, 2008-Ohio-849, 884 N.E.2d 1, at ¶ 15." In re State ex rel. Ludwig, Montgomery App. No. 22550,2008-Ohio-3873,
 {¶ 7} "`If a lower court patently and unambiguously lacks jurisdiction to proceed in a cause, prohibition and mandamus will issue to prevent any future unauthorized exercise of jurisdiction and to correct the results of prior jurisdictionally unauthorized actions.' * * * Where jurisdiction is patently and unambiguously lacking, relators need not establish the lack of an adequate remedy at law because the availability of alternate remedies like appeal would be immaterial." State ex rel.Sapp v. Franklin Cty. Court of Appeals, 118 Ohio St.3d 368, 1008-Ohio-2637, ¶ 15 (citations omitted). On the other hand, "[i]n the absence of a patent and unambiguous lack of jurisdiction, a court having general subject-matter jurisdiction can determine its own jurisdiction, and a party contesting that jurisdiction has an adequate remedy by appeal." State ex rel. Plant v. Cosgrove, 119 Ohio St.3d 264,2008-Ohio-3838, ¶ 5.
 {¶ 8} The Ohio Supreme Court recently analyzed the limits of municipal court jurisdiction in Cheap Escape Co., Inc. v Haddox, L.L.C., Slip Opinion No. 2008-Ohio-6323, *Page 4 
holding that "municipal courts do not have subject-matter jurisdiction over extraterritorial matters except in limited statutorily created circumstances." Id., ¶ 1. Cheap Escape Co., Inc. ("Cheap Escape") produced a magazine featuring business advertisements, and the company entered into two contracts with Haddox L.L.C. ("Haddox") to run ads for Haddox in the magazine. The contract contained a forum-selection clause that provided that the proper venue for purposes of litigation was in the Franklin County Municipal Court or the Franklin County Court of Common Pleas. When Haddox defaulted on the contracts, Cheap Escape filed a breach of contract action in Franklin County Municipal Court against Haddox and Jeffrey Tessman, who signed the contracts as guarantor. When the defendants failed to respond, the court granted a default judgment in favor of Cheap Escape. Tessman later moved to vacate the judgment, arguing that the municipal court lacked subject matter jurisdiction because none of the events relevant to the breach occurred in Franklin County. The municipal court overruled the motion, and the court of appeals reversed the municipal court and remanded the matter for dismissal, after determining that the municipal court did not have jurisdiction. Id., at ¶ 2-4.
 {¶ 9} The Supreme Court of Ohio began its jurisdictional analysis with a review of R.C. 1901.18(A), which provides, "Except as otherwise provided in this division or section 1901.181 of the Revised Code, subject to the monetary jurisdiction of municipal courts as set forth in section 1901.17 of the Revised Code, a municipal court has original jurisdiction within its territory in all of the following actions or proceedings * * *." After considering the plain language of the phrase, "original jurisdiction within its territory," the Supreme Court determined that the statute is ambiguous, since the phrase "within its territory" "could refer to either `original jurisdiction' or the list of *Page 5 
actions in the statutory subsections." Id., ¶ 12. The Supreme Court determined, it "is simply unclear from the statutory language whether the General Assembly intended to limit municipal court subject-matter jurisdiction to territorial matters or to give municipal courts subject-matter jurisdiction over all matters suitable for municipal court review so long as the court sits within its territory when it disposes of a dispute." Id.
 {¶ 10} To resolve the ambiguity, the Supreme Court turned to other statutes addressing municipal court jurisdiction and conducted in pari materia review to ascertain the meaning of "within its territory" as used in R.C. 1901.18. Id., at ¶ 13. The Court noted that R.C. 1901.02
establishes municipal court territorial jurisdiction and also where each court must sit within each county, providing, "The municipal courts established by section 1901.01 of the Revised Code have jurisdiction within the corporate limits of their respective municipal corporations." Id., at ¶ 14. The Court further noted that R.C. 1901.19(B), which grants extraterritorial jurisdiction for a specific, limited purpose, would be unnecessary if municipal courts had statewide jurisdiction. Id., at ¶ 17. The Court also noted that R.C. 1901.20(A)(1) and (B) provide that a municipal court has subject-matter jurisdiction in criminal matters when the crime was committed "within its territory" or "within the limits of its territory." Id., at ¶ 18. The Court concluded, "R.C. 1901.18(A) limits municipal court subject-matter jurisdiction to actions or proceedings that have a territorial connection to the court." Id., ¶ 22 (emphasis added). Since it was undisputed that Cheap Escape, Haddox and Tessman did not have territorial connections to the Franklin County Municipal Court, the Supreme Court of Ohio determined that the municipal court lacked subject-matter jurisdiction, and it affirmed the court of appeals.
 {¶ 11} City of North Ridgeville v. Stack, supra, the authority upon which Krooss *Page 6 
primarily relies, is similar to Cheap Escape and is not, as he argues, "so closely analogous" to the matter herein. The defendant inStack was arrested for driving under the influence of alcohol and cited for speeding on Mills Road, the westbound lane of which lies within the City of Avon, and the eastbound lane of which lies within the City of North Ridgeville. North Ridgeville is within the jurisdiction of the Elyria Municipal Court, but Avon is not. Stack was stopped on the westbound lane in Avon, but the complaint stated that the offenses were committed in North Ridgeville. Stack pled not guilty and filed a motion to dismiss, arguing that the Elyria Municipal Court lacked jurisdiction over the matter. Stack's motion to dismiss was granted, and the judgment of the trial court was affirmed, because Avon, where the offenses were committed, was not within the Elyria Municipal Court's jurisdiction.Stack, at ¶ 10. In other words, Stack's offenses were not committed within the territory of the Elyria Municipal Court.
 {¶ 12} R.C. 1901.01(A) establishes a municipal court in Xenia, which pursuant to R.C. 1901.02, has jurisdiction "within the corporate limits of [its] * * * municipal corporation[]." Section 18, Article IV of the Ohio Constitution provides that a municipal court judge has "such power and jurisdiction, at chambers, or otherwise, as may be directed by law," and R.C. 1901.20(A) grants the Xenia Municipal Court "jurisdiction of the violation of any ordinance of any municipal corporation within its territory * * * and of the violation of any misdemeanor committed within the limits of its territory."
 {¶ 13} Unlike the parties in Cheap Escape and Stack, Krooss's actions for which he is being prosecuted appear to have "a territorial connection" to the Xenia Municipal Court. It is undisputed that Krooss was driving in Greene County, and that he was allegedly intoxicated when he was pulled over shortly thereafter in Montgomery County. There is nothing before us that suggests that Krooss did not become *Page 7 
intoxicated until after he entered Montgomery County, or that he was sober while driving in Greene County. The prosecutor will presumably attempt to use the evidence of intoxication that was discovered in Montgomery County to prove, by way of inference, that Krooss was driving while intoxicated in Greene County. To that extent, it cannot be said that Krooss' alleged conduct has no "territorial connection" to the Xenia Municipal Court. Certainly we cannot say at this point that the Xenia Municipal Court is "patently and unambiguously without jurisdiction" to hear this matter. Thus, Krooss has an adequate remedy at law, i.e., an appeal, in which he can raise his jurisdictional defense.
 {¶ 14} For the foregoing reasons, Krooss' petition for a writ of prohibition is DENIED and this matter is DISMISSED.
SO ORDERED.
MARY E. DONOVAN, Presiding Judge, WILLIAM H. WOLFF, JR., Judge, MIKE FAIN, Judge. *Page 1